UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SUN MICRO MEDICAL TECHNOLOGIES CORP.,

                    Plaintiff,

                                              06 Civ. 2083 (RWS)

          - against -

                                              O P I N I O N

PASSPORT HEALTH COMMUNICATIONS, INC.,
HEALTHWORKS ALLIANCE, INC., DAVE
TRIBBETT, JACK DARNELL, and
ADOLPH PAIER,

                    Defendants.
----------------------------------------X



A P P E A R A N C E S:

Attorneys for Plaintiff:
     A. TODD MEROLLA, ESQ.
     5855 Sandy Springs Circle, Suite 300
     Atlanta, GE 30328

     CONDON & FORSYTH
     Seven Times Square
     New York, NY 10036
     By:  STEPHEN J. FEARON, ESQ.
          JOHN MAGGIO, ESQ.
          Of Counsel

Attorneys for Defendants Passport Health Communications, Inc.
and Healthworks Alliance, Inc.:
     NORWICK & SCHAD
     110 East 59th Street
     New York, NY 10022
     By:  KENNETH P. NORWICK, ESQ.
          Of Counsel

     WALLER LANSDEN DORTCH & DAVIS
     511 Union Street, Suite 2700
     Nashville, TN 37219-1760
     By:  ROBB S. HARVEY, ESQ.
          RICHARD G. SANDERS, ESQ.
          Of Counsel

Attorneys for Defendants Dave Tribbett, Jack Darnell and Adolf
Paier:
     BROWN RAYSMAN MILLSTEIN FELDER & STEINER
     900 Third Avenue
     New York, NY 10022
     By:  RICHARD RAYSMAN, ESQ.
          MARNI WEISS, ESQ.
          Of Counsel

**Sweet, D.J.,**

Defendants Passport Health Communications, Inc. ("Passport"), Healthworks Alliance, Inc. ("Healthworks"), Dave Tribbett ("Tribbett"), Jack Darnell ("Darnell"), and Adolph Paier ("Paier") (collectively, Tribbett, Darnell, and Paier are hereinafter referred to as the "Individual Defendants") have moved pursuant to Rule 12(b)(2) and Rule 12(b)(6) to dismiss the complaint of plaintiff Sun Micro Medical Technologies Corp. ("SMT"). For the reasons set forth below, the motions are granted.

## Prior Proceedings

SMT filed its complaint alleging diversity jurisdiction and jurisdiction pursuant to the Copyright Act, 28 U.S.C. § 1338(a), seeking a declaratory judgment that Healthworks and Passport have used SMT Information (Compl. Count I); damages for breach of contract (Compl. Count II), fraud in the inducement (Compl. Count III), conversion (Compl. Count IV), and copyright infringement (Compl. Count V); and for punitive damages (Compl. Count VI).

The parties have submitted affidavits in connection with the instant motion, which was heard and marked fully submitted on June 14, 2006.

1

**The Complaint**

By an agreement dated February 21, 2002, SMT entered into an original distributor agreement with Healthworks (the "Distributor Agreement"). Under the Distributor Agreement, Healthworks licensed certain technologies and information from SMT under certain terms and conditions. (Compl. ¶ 13.) The Distributor Agreement was superseded by an Amended Distributor Agreement dated July 16, 2002 (the "Amended Agreement"). (Compl. ¶ 7.) The Amended Agreement incorporated the non-disclosure agreement between the parties dated May 11, 2001. The Amended Agreement also contained an exclusive venue provision for any litigation to be initiated and conducted in the United States District Court, Southern District of New York. (Compl. ¶ 8.)

Included in the licensed technologies is SMT's registered copyright, U.S. Reg. No. TXu-979-558 for Medi Track, a/k/a Denial Tracker, a/k/a Denial Manager, which is included as part, but not all, of the "SMT Information." (Compl. ¶ 12.) The "SMT Information" is a defined term in the Amended Agreement which consists of certain specific functionality, methodologies, algorithms and concepts that are found in SMT's developed MediTracker software, all derivative works and new versions thereof developed by SMT, and all intellectual property rights and ownership in such functionality, methodologies, algorithms and concepts. (Compl. ¶ 11.)

2

Under the Amended Agreement, SMT granted Healthworks a royalty-bearing, exclusive, worldwide, transferable right and license to use, copy, distribute, and create derivative works of the SMT Information. In return, SMT was to receive certain minimum payments which were ultimately to be applied to any royalty payments due under the Amended Agreement. (Compl. ¶ 14.)

Subsequent to the execution of the Amended Agreement, Healthworks, by representations from Tribbett, Darnell, and Paier, induced SMT on no less than five occasions to alter the original terms of Section 3.6(b) of the Amended Agreement so as to extend the period of exclusivity and decrease the minimum annual royalty payments. (Compl. ¶ 15.) The representations made by Tribbett, Darnell and Paier included promises to bring the Denial Tracker product (which was included in the SMT Information) to market faster than any other company in the marketplace, which never occurred; that the Healthworks programming staff would redevelop Denial Tracker; and that Healthworks already had orders from clients in the millions of dollars. (Compl. ¶ 16.)

On or about May 1, 2005, Passport and Healthworks merged and Passport became a successor in interest to the Amended Agreement and its terms. (Compl. ¶ 7.) Upon information and belief, Passport currently uses the SMT Information in certain of its products, including but not limited to SMT's 834 Interface. Use with any product constitutes a "Hybrid Product," as that term

3

is defined in Section 3.2(c) of the Amended Agreement, and SMT is entitled to a royalty payment for such use. In addition, on information and belief, Passport is now using work product ideas from SMT, including work flows, reports, and data relationships, to create improvements to certain products, for which SMT is also entitled to a royalty payment. (Compl. ¶ 17.)

## The Factual Submissions

The parties have submitted affidavits relating to jurisdiction. The following factual allegations are taken from those affidavits, are not disputed except as noted, and do not constitute findings by the Court.

### 1.   Passport

Almost five months after the last amendment to the Amended Agreement, on or about May 1, 2005, according to Passport, Healthworks merged with Healthworks Acquisition Corp. ("HAC"), a wholly-owned subsidiary of Passport, with Healthworks as the surviving corporation. As a result of this "reverse triangular merger," Healthworks became a wholly-owned subsidiary of Passport. As such, Passport did not formally assume any of Healthworks' liabilities or contracts, including the Amended Agreement. Contrary to Paragraph Seven of the complaint, Passport did not

4

merge with Healthworks; rather, its wholly-owned subsidiary, HAC, merged with Healthworks.

According to Passport, it has no offices in New York, maintains no employees in New York, maintains no bank accounts in New York, and pays no sales and excise taxes to New York. It is not registered to do business in New York. Only three of Passport's 3,000 clients have a location in New York, and none of these three clients uses the "Denial Tracker" software. Out of total revenues of approximately $20.5 million, Passport's revenues attributable to New York clients are well below $100,000, less than one-half of one percent of Passport's total revenues.

## 2.   The Individual Defendants

According to the Individual Defendants, in or about January 2002, Mark Kole ("Kole"), President of SMT, contacted Darnell about a potential business opportunity which Kole described as a good business opportunity for both Healthworks and SMT. (Paier Decl. ¶ 5; Darnell Decl. ¶ 3.) Specifically, Kole offered Healthworks the opportunity to license SMT's "MediTracker" software, which was created to allow doctors or hospitals to keep track of denied claims submitted to Medicare, as well as to identify reasons for disputing the denial. (Paier Decl. ¶ 5; Darnell Decl. ¶ 3.)

5

Between January 2002 and February 2002, Darnell, Vice President of Business Development of Healthworks, and Paier, Chairman of the Board and Chief Executive Officer of Healthworks, spoke with Kole a number of times over the telephone to negotiate the terms of an agreement between Healthworks and SMT to license SMT's MediTracker software. (Paier Decl. ¶ 6; Darnell Decl. ¶ 4.) On Defendants' part, these telephonic conversations took place in Pennsylvania. (Paier Decl. ¶ 6; Darnell Decl. ¶ 4.) None of the telephonic conversations with Kole were made to a New York phone number. (Paier Decl. ¶ 6; Darnell Decl. ¶ 4.) Neither Darnell nor Paier ever went to New York. (Paier Decl. ¶ 6; Darnell Decl. ¶ 4.)

On or about February 21, 2002, Darnell, as Vice President of Business Development and on behalf of Healthworks, signed an agreement with SMT entitled the Distributor Agreement. (Darnell Decl. ¶ 5; Tribbett Decl. ¶ 3; Paier Decl. ¶ 7.) Darnell executed the Distributor Agreement in Pennsylvania, not New York. (Darnell Decl. ¶ 5.)

Approximately five months later, on July 16, 2002, Healthworks and SMT negotiated and signed an Amended Distributor Agreement (the "Amended Agreement"). (Compl. ¶ 7; Tribbett Decl. ¶ 4; Paier Decl. ¶ 8; Darnell Decl. ¶ 6.) Paier signed the Amended Agreement. (Paier Decl. ¶ 8; Tribbett Decl. ¶ 4; Darnell Decl. ¶ 6.) Darnell was involved in these negotiations. (Darnell Decl. ¶ 6; Paier Decl. ¶ 8.) Neither the negotiations nor the execution of

6

the Amended Agreement took place at any time in New York.  (Paier Decl. ¶ 8; Darnell Decl. ¶ 6.)  Kole visited Healthworks' offices in Pennsylvania sometime after Healthworks and SMT signed the Amended Agreement.  (Paier Decl. ¶ 8.)

Thereafter, Healthworks and SMT negotiated and subsequently executed a series of addenda to amend the Amended Agreement.  (Tribbett Decl. ¶ 5; Paier Decl. ¶ 9; Darnell Decl. ¶ 7.) Paier executed the addenda.  (Paier Decl. ¶ 9; Darnell Decl. ¶ 7.) Darnell was involved in the negotiations of the addenda but did not execute them.  (Darnell Decl. ¶ 7.)  Tribbett was not involved in the negotiations nor the execution of the addenda.  (Tribbett Decl. ¶ 5.)  The negotiations and execution of the addenda all took place in Pennsylvania.  (Paier Decl. ¶ 9; Darnell Decl. ¶ 7.)

In connection with the Distributor Agreement, the Amended Agreement, and the Addenda (collectively, the Distributor Agreement, the Amended Agreement and the Addenda are hereinafter referred to as the "Agreements"), Healthworks made a number of advances on future royalty payments to SMT until around April 30, 2005.  (Paier Decl. ¶ 10.)  At that time, there was a reverse triangular merger between Healthworks and Passport.  (Paier Decl. ¶ 11.)

The Individual Defendants are not now employees of Healthworks.  (Tribbett Decl. ¶ 6; Paier Decl. ¶ 11; Darnell Decl.

¶ 8.)   Tribbett, however, is currently an employee of Passport. (Tribbett Decl. ¶¶ 1, 6.)   Darnell is not now employed by Passport or Healthworks.   (Darnell Decl. ¶ 5.)

None of the Individual Defendants have lived or worked in New York.   (Tribbett Decl. ¶¶ 2, 7, 8; Darnell Decl. ¶¶ 2, 9, 10; Paier Decl. ¶¶ 2, 12, 13.)   To the contrary, each of the Individual Defendants has lived in Pennsylvania since at least 1997, although Tribbett currently lives in Florida while maintaining residences in Pennsylvania and Tennessee.   (Tribbett Decl. ¶ 8; Darnell Decl. ¶ 10; Paier Decl. ¶ 13.)

### 3.   SMT

According to SMT, a few months after execution of the Amended Agreement, during the summer of 2002, SMT programmers began working with Healthworks programmers pursuant to the Agreements to develop the Denial Tracker product.   (Kole Decl. ¶ 8.)

In the fall of 2002, principals of Healthworks directed Kole to travel to Canton, New York, to meet with a five-hospital group as possible "Beta Sites" for the Denial Tracker product. (Kole Decl. ¶ 9(A).)   In a telephone call with Paier and Darnell, SMT was informed that Healthworks needed a Beta Test Site for the product, and that the following five hospitals were interested: (1) Canton-Potsdam Hospital; (2) Alice Hyde Hospital Association;

8

(3) Clifton Fine Hospital; (4) Claxton Hepburn Medical Center; and (5) Massena Memorial Hospital.  While in Canton, New York, Kole spoke with Paier regarding the progress of the product.  During that telephone conversation, Paier told Kole that he "was under the gun to get the software done and income producing."  (Kole Decl. ¶ 9(A)).  After this trip, Kole was informed by Healthworks' Chief Technology Officer, Tribbett, that Alice Hyde Medical Center agreed to be the Beta Site.  (Kole Decl. ¶ 10.)

On October 22, 2002, Healthworks directed Kole to travel to New York City for a Denial Management summit.  (Kole Decl. ¶ 9(B).)  During that trip, Darnell met Kole in New York and discussed the validation of the SMT product and its future.

A year later, Darnell again met Kole in New York City to discuss the progress of the product development and future relationship between and among the parties.  (Kole Decl. ¶ 16.)

After execution of the Amended Agreement, Healthworks and its principals asked SMT to execute five addenda, which materially altered the payment terms of the Amended Agreement.  These addenda were dated as follows:

- Addendum No. 1:          December 18, 2002
- Addendum No. 2:          April 23, 2003
- Addendum No. 3:          August 20, 2003

9

- Addendum No. 4:          April 20, 2004
- Addendum No. 5:          December 3, 2004

(Kole Decl. ¶ 10.)

Over the next two-and-a-half years, Paier and Darnell convinced Kole that Healthworks was ready to "roll out" the Denial Tracker product, but that they needed to "free up cash flow" and urged Kole to "hang in there."  (Kole Decl. ¶¶ 10-16.)  Paier and Darnell insisted that the Denial Tracker project would soon "go to market."  (Kole Decl. ¶¶ 10-16.)  SMT relied on these representations in signing each of the five addenda.  (Kole Decl. ¶¶ 11-16.)

SMT shared its ideas, concepts, and software designs, and collaborated with Tribbett and his team of programmers.  (Kole Decl. ¶ 8.)  After the SMT programmers had been working with Healthworks programmers pursuant to the Amended Agreement, Tribbett stated that he now had a "revelation to use the SMT program and its functionalities to drive information into the products of Healthworks."  (Kole Decl. ¶ 8.)  According to SMT, Passport is now selling the Compliance Checker product that SMT was assisting Healthworks to improve pursuant to the Amended Agreement.  (Kole Decl. ¶ 22.)

10

## The Motions to Dismiss the Complaint Against Passport and the Individual Defendants for Lack of Personal Jurisdiction are Granted

Defendant Passport and the Individual Defendants both move to dismiss all claims against them based upon a lack of personal jurisdiction.

### 1.   The 12(b)(2) Standard

The plaintiff bears the burden of establishing that the court has jurisdiction over a defendant when served with a Rule 12(b)(2) motion to dismiss.  See, e.g., DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).  Because an evidentiary hearing has not been held, SMT need only make a prima facie showing of jurisdiction through the complaint's allegations and affidavits in order to defeat the motion to dismiss.  See, e.g., DiStefano, 286 F.3d at 84; CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (citing Marine Midland Bank N.A. v. Miller , 664 F.2d 899, 904 (2d Cir. 1981); United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir.), cert. denied, 384 U.S. 919 (1966)); see also Network Enters. v. APBA Offshore Prods., No. 01 Civ. 11765(CHS), 2002 WL 31050846, at *8 (S.D.N.Y. Sept. 12, 2002).  Additionally, the facts must be construed in the light most favorable to the Plaintiff.  Cooper,

11

Robertson & Partners L.L.P. v. Vail, 143 F. Supp. 2d 367, 370
(S.D.N.Y. 2001) (citing Hoffritz for Cutlery Inc. v. Amajac, Ltd.,
763 F.2d 55, 57 (2d Cir. 1985)).

Personal jurisdiction over a non-resident defendant in
a diversity case is determined by the law of the jurisdiction in
which the federal court sits. See Bensusan Restaurant Corp. v.
King, 126 F.3d 25, 27 (2d Cir. 1997). In the Complaint, SMT has
asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).
(Compl. ¶ 9.) Accordingly, an assessment must be made of whether
New York's Civil Practice Law and Rules ("CPLR") provides for
jurisdiction. See N.Y. C.P.L.R. §§ 301, 302.

### 2. Passport

#### a. There is No Personal Jurisdiction Based on Succession to or Assumption of the Amended Agreement

Initially, SMT sought to establish jurisdiction over
Passport on the basis of the contract between SMT and
Healthworks, Passport's acquisition of Healthworks, and an
alleged merger between Healthworks and Passport. The facts as
set forth above, however, establish that in terms of any corpo-
rate relationship, Passport and Healthworks did not merge and
Passport, by virtue of the transaction, did not succeed to the
Agreements with SMT.

12

In its Response Memorandum of Law in Opposition to Defendant Passport, SMT further contends that Passport has assumed the Agreements by making payments on behalf of Healthworks and negotiating for the termination of the Agreements. (Pl.'s Mem. in Opp'n to Passport 3-4.)  According to Passport: "The undisputed facts show otherwise."  (Def. Passport's Reply Br. 2.)

Although a factual determination as to assumption of the Agreements cannot be made on this affidavit record in view of the denial of such assumption by the Chief Development Officer of Passport (Kinard Decl. ¶ 22), an unrefuted allegation of assumption could constitute a sufficient basis to allege jurisdiction. See, e.g., Burrows Paper Corp. v. R.G. Eng'g, Inc., 363 F. Supp. 2d 379, 383 (S.D.N.Y. 2005); Schenker v. Assicurazioni Genereali S.p.A. Consol., No. 98 Civ. 9186(MBM), 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002) (citing Kulas v. Adachi, 96 Civ. 6674(MBM), 1997 WL 256957, at *5 (S.D.N.Y. May 16, 1997); Bear, Stearns & Co. v. Ralph C. Wilson Indus., Inc., 91 Civ. 2223(LMM), 1991 WL 211203, at *2-3 (S.D.N.Y. Oct.9, 1991)).  In the absence of such an unrefuted allegation in this matter, however, the Passport-Healthworks transaction does not provide a sufficient basis for jurisdiction.

13

**b.** **There Is Also No General or Specific Juris-
diction Under New York CPLR §§ 301 and 302**

In assessing whether personal jurisdiction is autho-
rized under New York law, the court looks to whether the defen-
dant is either "present" in New York within the meaning of CPLR §
301, <u>see</u>, <u>e.g.</u>, <u>Landoil Res. Corp. v. Alexander & Alexander
Servs., Inc.</u>, 77 N.Y.2d 28, 33 (N.Y. 1990), or has committed acts
within the scope of New York's long-arm statute, CPLR § 302, <u>see</u>,
<u>e.g.</u>, <u>Bensusan Rest. Corp.</u>, 126 F.3d at 27.  If the exercise of
jurisdiction is appropriate under New York's long-arm statute,
the court must decide whether such exercise comports with the
requisites of due process.  <u>Id.</u> (citing <u>Metro. Life Ins. Co. v.
Robertson-Ceco Corp.</u>, 84 F.3d 560, 567 (2d Cir.), <u>cert. denied</u>,
117 S. Ct. 508 (1996)).

### i. **CPLR § 301**

Pursuant to CPLR § 301, a defendant corporation is
considered to be "present" in the State for the purpose of
exercising general jurisdiction if such corporation is "doing
business" in the state.  <u>See</u>, <u>e.g.</u>, <u>Landoil Res. Corp.</u>, 77 N.Y.2d
at 33 (citing <u>Laufer v. Ostrow</u>, 55 N.Y.2d 305, 309-310 (N.Y.
1982); <u>Delagi v. Volkswagenwerk A.G.</u>, 29 N.Y.2d 426, 430-431
(N.Y. 1972); <u>Frummer v. Hilton Hotels Int'l</u>, 19 N.Y.2d 533, 536
(N.Y. 1967); <u>Simonson v. Int'l Bank</u>, 14 N.Y.2d 281, 285 (N.Y.

14

1964)); accord Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000). A defendant corporation is deemed to be "doing business" in New York if it has engaged in "such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted[.]" Landoil Res. Corp., 77 N.Y.2d at 33 (citing Laufer, 55 N.Y.2d at 309-310; Delagi, 29 N.Y.2d at 430-31; Frummer, 19 N.Y.2d at 536; Simonson, 14 N.Y.2d at 285). "Occasional" or "casual" contacts are insufficient to confer jurisdiction. See, e.g., Hearst Corp. v. Goldberg, No. 96 Civ. 3620(PKL)(AJP), 1997 WL 97097, at *8 (S.D.N.Y. Feb. 26, 1997) (interpreting statute to include corporations "'doing business' in New York, 'not occasionally or casually, but with a fair degree of permanence and continuity'"); En Vogue v. UK Optical Ltd. & British Optical Import Co., 843 F. Supp. 838, 842 (E.D.N.Y. 1994) ("'doing business' has been equated with a continuous and systematic course of business by the defendant in New York"). Factors courts consider to determine whether a foreign corporation is "doing business" include whether the defendant has an office in the state, solicits business in the state, owns property or bank accounts within the state, or has employees or agents within the state. See Landoil Res. Corp., 918 F.2d 1039, 1043 (2d Cir. 1990) (citing Hoffritz, 763 F.2d at 58).

In support of its argument for this Court's personal jurisdiction over Passport, SMT has contended that Passport's

15

three New York customers are evidence of "substantial solicita-
tion." However, SMT has not alleged the timing of such solicita-
tions, and the "relevant time period for the jurisdictional
inquiry . . . is at the time of service of the summons and
complaint." Purdue Pharma L.P. v. Impax Labs., Inc., No. 02 Civ.
2803(SHS), 2003 WL 22070549, at *1 n.1 (S.D.N.Y. Sept. 4, 2003)
(citing Gaboury v. Cent. Vt. Ry. Co., 165 N.E. 275 (N.Y. 1929);
Andros Compania Maritima S.A. v. Intertanker Ltd., 714 F. Supp.
669, 675 (S.D.N.Y. 1989)); accord Klinghoffer v. S.N.C. Achille
Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione
Straordinaria, 937 F.2d 44, 52 (2d Cir. 1991) (citing 4 C. Wright
& Miller, Federal Practice and Procedure, § 1051, at 160-62
(1987)); Gaboury, 165 N.E. at 276 (Cardozo, J.). Nor has SMT
established "substantial solicitation that is carried on with a
considerable measure of continuity and from a permanent locale
within the state." Beacon Enters., Inc. v. Menzies, 715 F.2d
757, 763 (2d Cir. 1983) (internal quotations omitted). Passport,
on the other hand, has demonstrated that it has no offices,
property, employees or agents in New York upon which personal
jurisdiction could be based.

Furthermore, the decisions on which SMT grounds its
CPLR § 301 argument confirm that New York lacks general jurisdic-
tion over Passport. First, in Dunn v. S. Charters, Inc., 506 F.
Supp. 564 (E.D.N.Y. 1981), where the defendant derived no more
than one and one-half percent of its total revenues from New

16

York, or $10,000, the court held New York lacked general juris-
diction (or personal jurisdiction in any form) over the defen-
dant. Id. at 567-68. Second, in Stark Carpet Corp. v. M-Geough
Robinson, Inc., 481 F. Supp. 499 (S.D.N.Y. 1980), the defendant
derived two percent of its total income from New York, amounting
to $1,500, and made "periodic visits" to New York. Id. at 505.
Yet it was held in Stark Carpet that there was no "substantial
solicitation" in New York and, therefore, New York lacked general
jurisdiction (or any form of personal jurisdiction) over the
defendant. Id. at 505-06, 510. Finally, in New England Lami-
nates Co. v. Murphy, 362 N.Y.S.2d 730 (N.Y. Sup. Ct. 1974), the
defendant had approximately ten customers in New York from which
it derived $400,000 in revenue, out of $10 million in total
revenue. Id. at 733. Yet the court in New England Laminates
held that the defendant was "not engaged in such a continuous and
systematic course of 'doing business' in New York as to warrant a
finding of its 'presence' in this jurisdiction under CPLR 301."
Id. at 734.

Here, Passport derives less than $100,000 in revenues
from its three New York customers (Def. Passport's Reply Br. 6),
representing less than one-half of one percent of its total
revenues. Passport's New York revenues are less than one-quarter
of those of the defendant in New England Laminates, less than
one-third of the defendant's portion in Dunn, and less than one-
quarter of the defendant's portion in Stark Carpet. Therefore,

17

as in the three cases discussed, Passport's solicitation in New York does not rise to a level sufficient to warrant a finding of Passport's presence in New York under CPLR § 301.

### ii. **CPLR § 302**

CPLR § 302 provides that:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>>
>> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>>
>> 3. commits a tortious act without the state causing injury to person or property within the state . . .; or
>>
>> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

Therefore, because none of SMT's claims against Passport "arise from" business carried out by Passport in New York or that caused injury in New York, personal jurisdiction does not adhere pursuant to CPLR § 302. Again, Passport has demonstrated that it has no property in the state.

18

Accordingly, based on the above analysis, the motion to dismiss the complaint against defendant Passport for lack of personal jurisdiction is granted.

## 3.   **The Individual Defendants**

SMT asserts that this Court has personal jurisdiction over the Individual Defendants based on New York's long-arm statute.  Specifically, SMT asserts that the Individual Defendants are subject to specific jurisdiction based on: (1) transacting business in New York, pursuant to CPLR § 302(a)(1); and (2) committing a tortious act in New York, pursuant to CPLR § 302(a)(2).  SMT cannot successfully establish personal jurisdiction over the Individual Defendants on either of these grounds.

### a.   **Transacting Business**

First, as with defendant Passport, SMT has failed to show that any of the Individual Defendants has transacted business in New York in satisfaction of the personal jurisdiction requirement of CPLR 301(a)(2).  As this Court stated in <u>Mattel,</u> <u>Inc. v. Adventure Apparel</u>, "The `jurisdictional net cast by CPLR § 302(a) subsection (1) . . .  reaches only a defendant that purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law.'"  No. 00 Civ. 4085(RWS) 2001 WL 286728,

19

at *2 (S.D.N.Y. Mar. 22, 2001) (quoting <u>Viacom Int'l, Inc. v.</u> <u>Melvin Simon Prods.</u>, 774 F. Supp. 858, 862 (S.D.N.Y. 1991) (internal citations and quotation marks omitted)). Nowhere in the Complaint does SMT allege that the Individual Defendants have transacted any business in New York, nor does the Kole Declaration sufficiently allege that the Individual Defendants transacted business in New York in satisfaction of CPLR § 301(a)(1). Although Kole indicates that he met with Darnell in New York on two different occasions (Kole Decl. ¶¶ 9(B), 14), neither meeting was essential enough to establish specific personal jurisdiction under New York's long-arm statute. <u>See NCA</u> <u>Holding Corp. v. Ernestus</u>, No. 97 Civ. 1372(LMM), 1998 WL 388562, at *4 (S.D.N.Y. July 13, 1998) (citing <u>Kahn Lucas Lancaster, Inc.</u> <u>v. Lark Int'l Ltd.</u>, 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997); <u>U.S.</u> <u>Theatre v. Gunwyn/Landsburgh Ltd.</u>, 825 F. Supp. 594, 596 (S.D.N.Y. 1993); <u>PaineWebber Inc. V. WHV, Inc.</u>, No. 95 Civ. 0052(LMM), 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995)).

Furthermore, the factors to be considered in determining whether a party "transacts business" in New York point to a lack of personal jurisdiction over the Individual Defendants in this regard. According to the one case relied upon by SMT, <u>United Feature Syndicate, Inc. v. Miller Features Syndi-</u> <u>cate, Inc.</u>:

> Whether the defendant "transacts business" in New York
> is determined with reference to a variety of factors,

20

including:

(i) whether the defendant has an on-going contractual
relationship with a New York corporation, (ii) whether
the contract was negotiated or executed in New York,
and whether, after executing a contract with a New York
business, the defendant has visited New York for the
purpose of meeting with parties to the contract regard-
ing the relationship, (iii) what the choice-of-law
clause is in any such contract, and (iv) whether the
contract requires [the defendant] to send notices and
payments into the forum state or subjects them to
supervision by the corporation in the forum state.

216 F. Supp. 2d 198, 204-05 (S.D.N.Y. 2002) (citing <u>Agency Rent A</u>
<u>Car Sys., Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2d Cir.
1996); <u>CutCo Indus., Inc.</u>, 806 F.2d at 368)).

### b.   **Tortious Acts**

Second, SMT has also failed to show that any of the
Individual Defendants has committed a tortious act in New York
that would subject any of them to specific personal jurisdiction
pursuant to CPLR § 301(a)(2).

Fraudulent representations and copyright infringement
are the only possible tortious acts[1] that the Individual

___

[1] A party who is fraudulently induced to enter into a contract may
join a cause of action for fraud, and such a claim is not
considered an improper effort to convert a contract claim into a
tort claim.  <u>See</u> <u>Campers' World Int'l, Inc. v. Perry Ellis Int'l,</u>
<u>Inc.</u>, No. 02 CIV. 453(RPP), 2002 WL 1870243, at *4 (S.D.N.Y. Aug.
13, 2002).  Also, "`[c]opyright infringement is in the nature of a
tort . . . .'"  <u>AMC Film Holdings LLC v. Rosenberg</u>, No.
03CV3835(DRH)(ARL), 2005 WL 2105792, at *7 (E.D.N.Y. Aug. 31, 2005)

21

Defendants could have committed in New York in support of the claims charged by SMT in its Complaint. The Complaint, however, does not allege that any such acts were committed in New York. Although the Kole Declaration alleges that the Individual Defendants made misrepresentations to Kole that induced him to agree to the five addenda to the Amended Agreement, Kole does not allege that any of those misrepresentations were made in New York. (See Kole Decl. ¶¶ 11, 12, 13, 15, 16.) Furthermore, for jurisdictional purposes, copyright infringement occurs where the allegedly infringing product is offered, displayed, or sold. See, e.g., Stewart v. Adidas A.G., No. 96 Civ. 6670 (DLC), 1997 WL 218431, at *5 (S.D.N.Y. Apr. 30, 1997); Mantello v. Hall, 947 F. Supp. 92, 101 (S.D.N.Y. 1996). Yet neither the SMT Complaint nor the Kole Declaration allege any offering, displaying, or selling of allegedly infringing products in New York.

Accordingly, the motion to dismiss the Complaint against the Individual Defendants for lack of personal jurisdiction is also granted.

---

(quoting Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552, 554 (2d Cir. 1972)).

## The Claims for Fraud in the Inducement, Conversion, Copyright Infringement, and Punitive Damages Are Dismissed

The Defendants have also moved to dismiss several of SMT's claims pursuant to Rule 12(b)(6), Fed. R. Civ. P.

### 1. The 12(b)(6) Standard

In reviewing a complaint for legal sufficiency under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court takes the material factual allegations as true and draws all reasonable inferences in favor of the plaintiff, dismissing the complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); accord Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176-77 (2d Cir. 2004). For the purposes of a Rule 12(b)(6) motion, all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

23

support the claims." <u>Villager Pond, Inc. v. Town of Darien</u>, 56
F.3d 375, 378 (2d Cir. 1995) (quoting <u>Scheuer</u>, 416 U.S. at 236).
In other words, "'the office of a motion to dismiss is merely to
assess the legal feasibility of the complaint, not to assay the
weight of the evidence which might be offered in support
thereof.'" <u>Eternity Global Master Fund Ltd.</u>, 375 F.3d at 176
(quoting <u>Geisler v. Petrocelli</u>, 616 F.2d 636, 639 (2d Cir.
1980)).

The Court may consider outside documents that are
integral to the complaint, regardless of whether those documents
are attached to the complaint, so long as the pleader has given
notice of them or refers to them. <u>See Gregory v. Daly</u>, 243 F.3d
687, 691 (2d Cir. 2001); <u>Schnall v. Marine Midland Bank</u>, 225 F.3d
263, 266 (2d Cir. 2000). "[W]hile courts generally do not
consider matters outside the pleadings, they may consider docu-
ments attached to the pleadings, documents referenced in the
pleadings, or documents that are integral to the pleadings in
order to determine if a complaint should survive a 12(b)(6)
motion." <u>Garcia v. Lewis</u>, No. 05 Civ. 1153(SAS), 2005 WL
1423253, at *3 (S.D.N.Y. June 16, 2005). When ruling on a motion
to dismiss, the Court may take judicial notice of records and
reports of administrative bodies, items in the record of the
case, matters of general public record, and copies of documents
attached to the complaint. <u>See Calcutti v. SBU, Inc.</u>, 224 F.
Supp. 2d 691, 696 (S.D.N.Y. 2002).

24

## 2.   The Fraud in the Inducement Claim Is Dismissed

Rule 9(b), Fed. R. Civ. P., provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The Second Circuit "has read Rule 9(b) to require that a complaint [alleging fraud] '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills, 12 F.3d at 1175). The pleading must be sufficiently particular to serve the three goals of Rule 9(b), which are (1) to provide a defendant with fair notice of the claims against it, (2) to protect a defendant from harm to its reputation or goodwill by unfounded allegations of fraud, and (3) to reduce the number of strike suits. See DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (citing Reingold v. Deloitte Haskins & Sells, 599 F. Supp. 1241, 1266 (S.D.N.Y. 1984)); O'Brien v. Price Waterhouse, 740 F. Supp. 276, 279 (S.D.N.Y. 1990), aff'd, 936 F.2d 674 (2d Cir. 1991).

Further, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." Hampshire Equity

25

Partners II, L.P. v. Teradyne, Inc., No. 04 Civ. 3318 (LAP), 2005 WL 736217, at *2 (S.D.N.Y. Mar. 30, 2005). A plaintiff "can establish the requisite 'strong inference of fraudulent intent' either by demonstrating 'that defendants had both motive and opportunity to commit fraud, or [] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  Id. (quoting Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001)).

In Count III, SMT alleges that the Individual Defendants made misrepresentations concerning the development, advertising and marketing of the Denial Tracker software. (Compl. ¶¶ 16, 25-32.)  Specifically, SMT alleges that:

- As to Defendant Paier, he represented to Plaintiff that Healthworks would take over all aspects of the product development and deliver a final product within the first few months . . . Defendant Paier represented to Plaintiff that Healthworks had an existing development team and a large budget to ensure its success. . . .

- As to Defendant Tribbett, he represented to Plaintiff that Healthworks would not use any ideas, concepts, or algorithms that were presented by Plaintiff to the programmers of Healthworks . . . .

- As to Defendant Darnell, he represented to Plaintiff that Healthworks would redevelop the Denial Tracker product with a team of programmers and to develop a product line using the SMT Information.

(Compl. ¶¶ 27-29.)

Here, SMT has failed to plead where and when the alleged statements of the Individual Defendants were made, why the alleged statements were fraudulent, or any facts to support any inference of fraudulent intent. Therefore, the alleged misrepresentations concerning the development, advertising, and sale of SMT's software (Compl. ¶¶ 16, 25-32) are insufficient as a matter of law, and the claim is dismissed accordingly. See, e.g., Rombach, 355 F.3d at 172-73 (affirming dismissal of fraud claim because "the complaint does not 'state with particularity the specific facts in support of [plaintiff's] belief that [defendants'] statements were false when made,' and therefore fails the test of Rule 9(b)"); Hampshire Equity Partners II, L.P., 2005 WL 736217, at *3-4 (dismissing fraud claim because, inter alia, "[t]he Complaint does not allege . . . any specific facts giving rise to a strong inference that any allegedly fraudulent statement was knowingly false when made").

Furthermore, the liability of Passport for fraud in the inducement is alleged to have resulted from the statements of its officers (Compl. ¶ 33). It appears, however, that the Individual Defendants were not officers of Passport at the time of the alleged representations. This therefore provides an additional ground for dismissing the fraud in the inducement claim against Passport.

27

**3.   The Conversion Claim is Preempted and Therefore Dismissed**

The Copyright Act provides that:

On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by this title. . . . no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

Pursuant to Section 301(a) of the Copyright Act, federal copyright law will preempt a state law claim when two conditions are satisfied.  First, the subject matter of the work upon which the state claims are premised must fall within the subject matter of the Copyright Act, as defined by the Act. Stewart v. World Wrestling Entm't, Inc., No. 03 CV 2468 RLC, 2005 WL 66890, at *2 (S.D.N.Y. Jan. 11, 2005).  Second, the rights that are asserted under the state law must be equivalent to those protected by the Copyright Act.  Id. (citing Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 200 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985); Universal

28

City Studios, Inc. v. T-Shirt Gallery, 634 F. Supp. 1468, 1475 (S.D.N.Y. 1986) (Sprizzo, J.)).

Courts in this Circuit have dismissed conversion claims because they were preempted by the Copyright Act.  See, e.g., Stewart, 2005 WL 66890, at *5-6; Archie Comic Publ'ns, Inc. v. DeCarlo, 141 F. Supp. 2d 428, 432 (S.D.N.Y. 2001).  In Stewart, the court quoted the Second Circuit as stating:

> if unauthorized publication is the gravamen of their claim, then it is clear that the right they seek to protect is coextensive with an exclusive right already safeguarded by the [Copyright] Act -- namely, control over reproduction and derivative use of copyrighted material.  As such, their conversion claim is necessarily preempted.

2005 WL 66890, at *5 (quoting Harper & Row Publishers, Inc., 723 F.2d at 201).

Here, the gravamen of SMT's claim is that "Passport wrongfully converted the SMT Information without adequate compensation to Plaintiff."  (Compl. ¶ 37.)  The SMT Information is the same information SMT claims copyright ownership of and alleges the Defendants misappropriated in its copyright infringement claim.  (Compl. ¶¶ 11-12, 14, 16, 17, 40-44.)  Since the conversion claim comprises the same materials for which SMT seeks copyright protection, rather than conversion of physical

29

documents, its claim for conversion is preempted.  <u>See</u> <u>Harper &</u>
<u>Row Publishers, Inc.</u>, 723 F.2d at 201.  The conversion claim is
therefore dismissed.

Because the conversion claim is dismissed based on
preemption, it is not necessary to reach any of the Defendants'
other arguments in support of dismissing the conversion claim.

## 4.    The Copyright Infringement Claim Is Dismissed

"To withstand a motion to dismiss, a properly plead
copyright infringement claim must allege: '(i) which specific
original work is the subject of the claim, (ii) that plaintiff
owns the copyright in the work, (iii) that the copyright has been
registered in accordance with the statute, and (iv) by what acts
during what time the defendant infringed the copyright.'"
<u>Brought to Life Music, Inc. v. MCA Records, Inc.</u>, No. 02 Civ.
1164(RWS), 2003 WL 296561, at *1 (S.D.N.Y. Feb. 11, 2003)
(quoting <u>Marvullo v. Gruner & Jahr AG & Co.</u>, No. 98CIV.5000(RLC),
2001 WL 40772, at *2 (S.D.N.Y. Jan.17, 2002)).

Here, SMT has pled that: (1) Plaintiff is the owner of
a copyright for Denial Tracker (Compl. ¶ 12); (2) "On information
and belief, Passport now uses the SMT Information in certain of

30

its products" (Id. ¶ 17); (3) Passport's use constitutes a Hybrid Product for which Plaintiff is entitled to a royalty payment (Id.); (4) Passport is now using work product ideas from Plaintiff (Id.); and (5) by virtue of Passport's acts, "Plaintiff is entitled to recover from Defendants, jointly and severally, the amount of its actual damages incurred as a result of the infringement" (Id. ¶ 44). (See generally id. ¶¶ 41-44.)

Such general allegations as to acts of infringement are insufficient at the pleading stage. As already stated, a plaintiff must allege "by what acts during what time the defendant infringed the copyright." Brought to Life Music, Inc., 2003 WL 296561, at *1 (dismissing copyright claim with leave to replead where plaintiff failed to plead the infringing acts with sufficient specificity); Plunket v. Doyle, No. 99 Civ. 11006 (KMW), 2001 WL 175252 at *5-6 (S.D.N.Y. Feb. 22, 2001) (same). Accordingly, the copyright infringement claim is dismissed.

In addition, there are no allegations that the Individual Defendants participated in, supervised, or controlled the alleged infringing actions of Passport -- the party which allegedly committed copyright infringement. The SMT allegation of Passport's acts of copyright infringement, without more, is insufficient to state a claim for copyright infringement against the Individual Defendants. See Cable News Network, L.P.,

31

L.L.L.P. v. GoSMS.com, Inc., No. 00 Civ. 4812(LMM), 2000 WL
1678039, at *6 (S.D.N.Y. Nov. 6, 2000) (citing Carell v. The
Shubert Org., Inc., 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000))
(dismissing copyright infringement claim against defendants who
were director and major shareholder of allegedly infringing
company, where plaintiffs failed to allege "acts of infringement,
supervision or control over the direct infringers, or
contribution to the infringement"). This therefore provides an
additional ground for dismissing the copyright infringement claim
as against the Individual Defendants.

## 5.   The Punitive Damages Claim Is Dismissed

In Count VI, SMT has alleged that the Defendants have
acted with "malice, a conscious disregard for the rights of
Plaintiff" and, as a result of "such egregious and intentionally
tortious conduct, Plaintiff is entitled to recover punitive
damages against each Defendant."  (Compl. ¶¶ 46-47.)

Under New York, Pennsylvania and Tennessee law,[2] there
is no separate cause of action for punitive damages alone;

---

[2]     Passport is domiciled in Tennessee and HAI and the
Individual Defendants are domiciled in Pennsylvania.  Because there
is no conflict among the state laws of New York, Tennessee, and
Pennsylvania with respect to the availability of a stand-alone
claim for punitive damages, a choice-of-law analysis is not
required here.

32

rather, entitlement to punitive damages is dependent on underlying liability for a substantive claim. See Rotello v. Clayton Homes of Del., Inc., No. 3:03-CV-573, 2006 WL 2771018, at *2 (E.D. Tenn. Sept. 25, 2006) (applying Tennessee law and dismissing cause of action for punitive damages "inasmuch as such a claim is not appropriately asserted as an independent count in a complaint"); Bishop v. GNC Franchising LLC, 403 F. Supp. 2d 411, 425 (W.D. Pa. 2005) (citing Dittrich v. Seeds, No. Civ.A.03-CV-6128, Civ.A.04-CV-1302, 2005 WL 2436648, at *2 (E.D. Pa. Sept. 28, 2005); Shorb v. State Farm Mut. Auto. Ins. Co., No. Civ. 1CV-05-0296, 2005 WL 1137881, at *5 (M.D. Pa. Apr. 25, 2005); Waltman v. Fahnestock & Co., 792 F. Supp. 31, 33 (E.D. Pa. 1992)) (applying Pennsylvania law and stating, "[P]unitive damages are not an independent cause of action. Rather, punitive damages are a remedy."); Shapira v. Charles Schwab & Co., 187 F. Supp. 2d 188, 192 (S.D.N.Y. 2002) ("[I]t is hornbook law that there is no stand-alone claim in New York for punitive damages."); Kenny v. RBC Royal Bank, 803 N.Y.S.2d 49, 50 (N.Y. App. Div. 1st Dep't 2005) ("[S]ince plaintiff's substantive claims were properly dismissed, his claim for punitive damages was also properly dismissed.").

Accordingly, to the extent SMT is seeking punitive damages as a distinct cause of action, or based on its claims of fraud in the inducement, conversion, or copyright infringement, its punitive damages claim is dismissed at this time.

33

**Conclusion**

The motions of the Defendants to dismiss the complaint in its entirety as against Passport and the Individual Defendants for lack of personal jurisdiction is granted. In addition, the motions of the Defendants to dismiss the claims for fraud in the inducement, conversion, and copyright infringement as against all of the Defendants for failure to state a claim are also granted. Finally, the motions to dismiss the claim for punitive damages as against all of the Defendants for failure to state a claim is granted to the extent that SMT is seeking punitive damages as a distinct cause of action or based on its claims of fraud in the inducement, conversion, or copyright infringement.

Leave is granted to replead within twenty (20) days or such other date as the parties may agree upon or the Court may direct.

It is so ordered.

New York, NY
December  ⊬  , 2006

ROBERT W. SWEET
U.S.D.J.

34